BARRY, Judge.
The sole question on this appeal is the excessiveness of a $73,000.00 general damage award for pain and suffering.[1] The $1,488.21 special damage award for medical expenses is not in dispute.
Mrs. Marion L. Plaisance sustained a back injury on November 10, 1975 when her automobile was rear ended by a vehicle driven by the defendant.[2]
The evidence relating to the injuries sustained by Mrs. Plaisance consists of her testimony, together with that of her husband, the medical testimony of Dr. William Bagnetto, a general practitioner, and Dr. Jack L. Winters, an orthopedic surgeon. Records of Mrs. Plaisance’s hospitalization on occasions prior to the accident were offered over plaintiff’s objection, and a record of hospitalization subsequent to the accident is of little, if any, value in determination of the quantum question.
On November 11, 1975, the day following the accident, plaintiff saw Dr. Bagnetto. Her complaints at that time were pain in the lower back, headache, neck pains, and dizziness. The doctor’s diagnosis after examination was sprain of neck and lower back. Medication and muscle relaxants were prescribed. On November 18th diathermy treatment was administered. According to Dr. Bagnetto, on plaintiff’s last visit on December 16, 1975 she complained of continued pain in the lower back, however, her neck pain was subsiding. The doctor concluded that Mrs. Plaisance had suffered a cervical and lumbar strain which he described as a “whiplash” injury.
Mrs. Plaisance, forty years of age at the time of the accident, saw Dr. Jack L. Winters, on January 19, 1976. Her complaints at that time were neck pain, headaches and pain in the lower back. Muscle relaxants and pain pills were prescribed. Although examination at that time revealed no spasms, tenderness was discerned at the base of the neck. No neurological abnormalities were seen. X-rays taken on November 11, 1975 by Dr. Bagnetto, and additional X-rays taken by Dr. Winters on the January 19th visit, indicated presence of very mild lumbosacral intervertebral disc degeneration. Subsequent to the initial visit plaintiff was seen by Dr. Winters at approximately one month intervals, during which time she continued with anti-inflammatory medication and restrictions on physical activities. In June 1976 a lumbosacral disc support was prescribed. Dr. Winters’ notes at the time of the June 1976 visit indicated pain in the lumbar region was more intense than initially. Continued complaints of lower back pain were made by plaintiff on her September 1976 and March 1977 visits. She described feeling tired and stiff in the early morning. On August 29, 1977, examination revealed continued tenderness in the lumbosacral area. Again, no neurological abnormalities were discerned. Plaintiff stated at this time that approximately ten days prior to the visit she had stepped in a hole and jarred her back and sprained her ankle.
Because of complaints that plaintiff was unable to use the lumbosacral corset, Dr. Winters advised the use of a plastic low back support corset. Due to continued complaints of pain in the lower back, restriction in low back movement, and pain in both legs, a myelogram and electromyelogram *568 study of the back and lower extremities were recommended. The myelographic study was accomplished on October 19,1977 and indicated the possibility of irritation of the fifth lumbar nerve root. On November 2nd, during a three day visit at West Jefferson Hospital a myelogram was performed. According to Dr. Winters, the electromyelogram study indicated some defect in the nerve supplies to the muscles, probably the result of a degenerative disc. He stated it was difficult to ascertain how much of the problem- relates to the trauma and how much relates to disc degeneration. The implication from the myelogram was that, while a degenerative disc and nerve root irritation were discerned, the disc was not protruding into the spinal canal.
After discharge from West Jefferson Hospital on November 5,1977, plaintiff was again seen on November 22, 1977. At that time she continued to complain of pain in both legs, but of greater degree in the left leg. She exhibited considerably more tenderness in the lower back. Between December 12, 1977 and December 11, 1978, plaintiff was seen by Dr. Winters on approximately six occasions.[3] During this period of time, despite self-restricted movement, she continued to have pain in the lower back and legs. Examinations indicated continued decreased range of motion in the back. Plaintiff was advised not to engage in any strenuous physical activity or lift any weight in excess of 20 pounds.
Dr. Winters’ findings were that Mrs. Plai-sance was suffering from a degenerative intervertebral disc in the back involving considerable nerve root irritation. He was of the opinion that she did not have a herniated disc. According to Dr. Winters, though the accident could not have caused the degenerative disc, it did aggravate her condition. His prognosis was as follows:
“I think it is very likely her symptoms will continue for an indefinite period as they are now, that is, they continue to come and go. I think it is unlikely but possible that she may have significant trouble and may have an operation in the future. I think that is unlikely. Most degenerative discs do not herniate and so I suspect it is unlikely that she will require surgery in the future. It is also possible on the other side of the coin that she might simply improve as time goes along. The reason for that is that as the disc degenerates and there is restriction the symptoms can be relieved. I think, however, it is most medically probable that her symptoms will continue unchanged for an indefinite period of time.”
In answer to specific questions, Dr. Winters indicated that intermittent back pain and restriction of activity could encompass a number of years and perhaps “the rest of her life”. He stated that plaintiff would have periods where she would experience no pain at all, with more periods of discomfort and some periods of pain that require medication and bed rest.
Finally, Dr. Winters indicated that he found no muscle spasms on examination, the disc degeneration was very mild and even without the accident, it was likely that some time in plaintiff’s life she would have developed difficulty. When pressed to classify plaintiff’s pain, he described it as “mild to moderate”.
Mrs. Plaisance testified that prior to the accident she did not have any back pain and was able to work a full day in her florist shop without restriction. She had no problem with housework or recreational physical activities. She stated that immediately after the accident she began to suffer severe headaches, and on the following day commenced to suffer with back and leg pain. She has been under treatment from the time of the accident to the date of trial on January 24, 1979. According to Mrs. Plai-sance, before the myelogram was taken she suffered pain “about three time a week”. She classified her pain as more severe after the myelogram. Finally, Mrs. Plaisance described the eleetromyelogram and myelo-gram tests as very painful.
During the course of the trial and in oral reasons for the award the trial judge said *569 he was favorably impressed with the honesty and demeanor of Mrs. Plaisance. His accurate summation of the injury and the course of treatment is supported by the record. Furthermore, his observation that pain suffered by Mrs. Plaisance could continue for an indefinite period was also consistent with Dr. Winters’ testimony.
Following the difficult guidelines of Beck v. Stevens, 373 So.2d 498 (La.1979), we have considered the “individual circumstances” of the instant case and “after analysis of the facts and circumstances peculiar” to our case, we have no alternative but to conclude that the trial court award is not excessive and not an abuse of the trial court’s discretion.
Accordingly, the judgment of the District Court is affirmed with costs of this appeal to be paid by defendants.
AFFIRMED.
REDMANN, J., concurs with written reasons.
GULOTTA, J., dissents with written reasons.

. The general damage award did not include any amount for loss of earnings. Furthermore, there is no evidence indicating any loss of earnings.

. Plaintiff described the impact as “pretty hard”. Defendant describes the accident as one where there was not “a whole lot of impact”. He described the damage to plaintiff’s car as a “little dent on the back of the car and a bent fender”. Damage to defendant’s car consisted of a “little hole in the grille work and a little dent where the hood latch is”.

. Plaintiff was seen on 12/12/77, 1/23/78, 5/2/78, 6/19/78, 9/14/78, and 12/11/78.